IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**PATRICK E. CHURCHVILLE,**

       **Petitioner,**

**v.**                                            **Civil Action No.: 3:20-CV-208**
                                                    **(GROH)**

**F. J. BOWERS, Warden,**

       **Respondent.**

## REPORT AND RECOMMENDATION

### I.  INTRODUCTION

On November 5, 2020, Petitioner, an inmate at Morgantown FCI, acting *pro se*, filed a Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 (the "Petition") challenging the calculation of his sentence, and paid the filing fee.  ECF Nos. 1, 3.[1]  On November 17, 2020, Petitioner filed the Court-approved form along with attachments. ECF No. 7, 7-1 through 7-7.

The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2.  For the reasons set forth below, the undersigned recommends that the Petition be denied and dismissed without prejudice.

---

[1] ECF Numbers cited herein refer to case number 3:20-CV-208 unless otherwise noted.

## II.    FACTUAL AND PROCEDURAL HISTORY

### A.    Conviction and Sentence in the District of Rhode Island[2]

On July 5, 2016, a six-count Information was filed in the District of Rhode Island, case number 1:16-CR-68, which charged Petitioner with: five counts of wire fraud, in violation of 18 U.S.C. § 1343 (Counts 1 – 5); and one count of tax evasion, in violation of 26 U.S.C. § 7201 (Count 6).  ECF No. 1.  Pursuant to a written plea agreement, Petitioner entered a guilty plea on August 4, 2016, to the Information and agreed to be sentenced to not more than 20 years in prison for each of Counts 1 through 5, and no more than five years for Count 6.  ECF No. 2 at 5; August 4, 2016, Minute Entry for proceedings held before Chief Judge William E. Smith.  On March 16, 2017[3], Petitioner was sentenced to 84 months as to Counts 1 through 5, and to 60 months as to Count 6, all of which were to be served concurrently with one another, followed by three years of supervised release.  ECF No. 22 at 3 – 4; March 16, 2017, Minute Entry for proceedings held before Chief Judge William E. Smith.

### B.    Other Motions for Relief Pursuant to the First Step Act

On February 3, 2021, Petitioner moved to reduce his sentence pursuant to the First Step Act which amended 18 U.S.C. § 3582.  ECF No. 63.  Petitioner alleged that COVID-19 presented extraordinary and compelling circumstances which warranted his release from FCI Morgantown.  Id. at 7.  Following a response by the Government and

---

[2] Throughout sections II.A. and II.B., all ECF numbers refer to entries in the docket of Criminal Action No. 1:16-CR-68 from the District of Rhode Island, available on PACER.  Philips v. Pitt Cnty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (courts "may properly take judicial notice of public record); Colonial Penn. Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the contents of court records.'").

[3] Judgment was imposed by the District Court on March 16, 2017, but not entered or filed with the Clerk until March 24, 2017.  ECF No. 22.

reply by Petitioner, on March 4, 2021, the Court denied Petitioner's motion to reduce his sentence, finding that Petitioner did not present extraordinary or compelling reasons which merited relief.  ECF Nos. 64, 65, March 4, 2021 text order by Chief Judge William E. Smith.

### C. Instant Petition for Habeas Corpus Under § 2241

On November 17, 2020, the Petitioner filed the Court-approved form for a petition for habeas corpus under 28 U.S.C. § 2241 in this Court.  ECF No. 7.  Petitioner's sole claim for relief is that the Bureau of Prisons has improperly calculated his sentence by its failure to grant him 330 days[4] of earned Good Time Credits pursuant to the First Step Act (FSA).  ECF No. 7 at 5 – 6, 7-1.

Petitioner asks this Court to order the Bureau of Prisons to: (1) award him all earned good time credits toward his supervised release; (2) adjust his release date to May 8, 2021; (3) adjust his home confinement date to November 8, 2020; (4) immediately release him to home confinement; (5) expedite this case; and (6) appoint him counsel[5].  ECF No. 7 at 8.

Respondent filed a motion to dismiss or in the alternative for summary judgment, with an accompanying memorandum and exhibits on December 14, 2020.  ECF Nos. 11, 11-1 through 11-5.  Respondent argues that Petitioner failed to exhaust available administrative remedies.  Further, Respondent argues that even if Petitioner had exhausted available remedies, that he is not entitled to relief because his request is

---

[4] Petitioner claims that as of the date he filed his petition he had already earned 330 days of good time credit pursuant to the First Step Act, but appears to claim that he would continue to earn additional days of good time credit during the pendency of this proceeding.  ECF No. 7 at 5, 8, 7-1 at 1.

[5] Petitioner's request was denied by order entered on this date, based on the reasons stated therein.

premature because the phase-in period which the BOP has for implementation of the FSA has not ended.

Petitioner filed a response to the motion to dismiss or for summary judgment on January 4, 2021. ECF No. 16. Therein, Petitioner asserts that he is not required to exhaust his administrative remedies, because doing so would be futile. Id. at 2. Petitioner argues that: (1) "the BOP has made it clear that they have taken the position that no credits need to be awarded until January 2022" [Id.]; (2) the BOP was required to begin awarding Good Time Credits beginning on January 15, 2020, and that the proximity to his release date should prioritize his review by BOP [Id. at 3]; and (3) he is entitled to credit for any programs he completed after the enactment of the FSA on December 21, 2018 [Id. at 4 – 5].

### III. LEGAL STANDARD

#### A. Review of Petitions for Relief

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and the Court's Local Rules of Prisoner Litigation Procedure, this Court is authorized to review such petitions for relief and submit findings and recommendations to the District Court. This Court is charged with screening Petitioner's case to determine if "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing Section 2254 Cases in the U.S. District Courts; see also Rule 1(b) Rules Governing Section 2254 Cases in the U.S. District Courts (a district court may apply these rules to a habeas corpus petition not filed pursuant to § 2254).

#### B. Pro Se Litigants.

Courts must read pro se allegations in a liberal fashion and hold those pro se

pleadings "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. A complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989) (superseded by statute). The Supreme Court in Neitzke recognized that:

> Section 1915(d)[6] is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.

490 U.S. at 327.

### C. Post-Conviction Remedies and Relief

Prisoners seeking to challenge the validity of their convictions or their sentences are required to proceed under § 2255 in the district court of conviction. By contrast, a petition for writ of habeas corpus, pursuant to § 2241, is intended to address the execution of a sentence, rather than its validity, and is to be filed in the district where the prisoner is

---

[6] The version of 28 U.S.C. § 1915(d) which was effective when Neitzke was decided provided, "The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." As of April 26, 1996, the statute was revised and 28 U.S.C. § 1915A(b) now provides, "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

incarcerated. "In a § 2241 petition a prisoner may seek relief from such things as the administration of his parole, computation of his sentence by parole officials, disciplinary actions taken against him, the type of detention, and prison conditions in the facility where he is incarcerated." Adams v. United States, 372 F.3d 132, 135 (2d Cir. 2004).

### D.   Motions to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted. The Federal Rules of Civil Procedure require only, "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited, "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

Plaintiff is proceeding *pro se* and therefore the Court must liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 - 1 (1972) (per curiam); Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007). Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face." Id. at 555, 570. In Twombly, the Supreme Court found that, "because the plaintiffs [ ] have not nudged their

claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570. Thus, to survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because courts are not bound to accept as true a legal conclusion couched as a factual allegation. Id. at 678. "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. Thus, a well-pleaded complaint must offer more than, "a sheer possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id. at 678.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

### E.     Motion for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a), the Court shall grant summary

judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence in the light most favorable to the nonmoving party. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion to, "demonstrate the absence of a genuine issue of material fact." 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

"The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a verdict." Anderson, supra, at 256. Thus, the nonmoving party must present specific facts showing the existence of a genuine issue for trial, meaning that "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248.

To withstand such a motion, the nonmoving party must offer evidence from which

8

a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, supra, at 248.

Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, supra, at 587. "Where the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. citing First Ntl. Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 155, 1592 (1968). See Miller v. Fed. Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). Although any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, where, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Matsushita, supra, at 587-88. Anderson, supra, at 248-49.

### IV. ANALYSIS

It appears to the Court that Petitioner is not entitled to relief based on his failure to exhaust administrative remedies, however, even when substantively considered, Petitioner's claim is without merit.

#### A. Petitioner is Not Entitled to Relief Under the First Step Act

The United States Supreme Court has long recognized that the United States Attorney General, acting through the BOP, is responsible for computing an inmate's term of confinement. United States v. Wilson, 503 U.S. 329, 334–35 (1992).

The First Step Act initiated a system that allows eligible prisoners to earn time credits for successfully completing "evidence-based recidivism reduction programming." 18 U.S.C. § 3632(d)(4)(A). More specifically, a prisoner will "earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." 18 U.S.C. § 3632(d)(4)(A)(i). In addition, a prisoner, who is determined "to be at a minimum or low risk for recidivating," may "earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities," if he has not increased his risk of recidivism over two consecutive assessments. 18 U.S.C. § 3632(d)(4)(A)(ii).

However, these programs did not go into effect immediately. The Attorney General was allowed 210 days after the First Step Act was enacted, on December 21, 2018, to develop and publish the Risk and Needs Assessment System, which the BOP was to use as a guide to implement the programs. 18 U.S.C. § 3632(a). The Attorney General published the Risks and Needs Assessment System on July 19, 2019.[7] The BOP then had 180 days, or until January 15, 2020, to implement the system, complete inmate assessments, and then begin to assign prisoners to appropriate evidence-based recidivism reduction programs. 18 U.S.C. § 3621(h). Additionally, there is two-year phase-in period which is prioritized according to projected release date:

> Phase-in.--In order to carry out paragraph (1), so that every prisoner has the opportunity to participate in and complete the type and amount of evidence-based recidivism reduction programs or productive activities they need, and be

---

[7] *The First Step Act of 2018: Risk and Needs Assessment System*, accessible online at https://nij.ojp.gov/sites/g/files/xyckuh171/files/media/document/the-first-step-act-of-2018-risk-and-needs-assessment-system_1.pdf.

> reassessed for recidivism risk as necessary to effectively implement the System, the Bureau of Prisons shall--
> (A) provide such evidence-based recidivism reduction programs and productive activities for all prisoners before the date that is 2 years after the date on which the Bureau of Prisons completes a risk and needs assessment for each prisoner under paragraph (1)(A); and
> (B) develop and validate the risk and needs assessment tool to be used in the reassessments of risk of recidivism, while prisoners are participating in and completing evidence-based recidivism reduction programs and productive activities.
> (3) Priority during phase-in.--During the 2-year period described in paragraph (2)(A), the priority for such programs and activities shall be accorded based on a prisoner's proximity to release date.

18 U.S.C. § 3621(h)(2).  Accordingly, the BOP has two years from January 15, 2020, to phase in the program.

Although Petitioner asserts that the Bureau of Prisons incorrectly calculated his sentence, and refuses to grant him credit for time earned[8] in rehabilitation programs, it is clear from 18 U.S.C. §§ 3621 and 3632 and the holding of <u>Wilson</u>, that neither the warden nor the Court calculate sentences for federal inmates.  That task is the exclusive responsibility of the Bureau of Prisons, and it is clear from <u>Wilson</u> and other holdings that this Court may not usurp the Bureau of Prisons' authority.  Accordingly, this Court cannot grant Petitioner's request for relief.  Moreover, the Bureau of Prisons has additional time to enact the changes pursuant to the First Step Act, and to the extent that Petitioner argues that the BOP has failed to implement the Act, that agency has additional time to do so, and such a claim is premature.

---

[8] The Court notes that an inmate may not earn credits for any evidence-based recidivism reduction program that he successfully completed prior to the date of the enactment of the FSA on December 21, 2018. 18 U.S.C. § 3632(d)(4)(B)(i).  Petitioner filed an Individualized Reentry Plan which shows he completed nine education courses prior to the date of the enactment of the FSA, with the latest completion date being January 30, 2018, and five course after the enactment of the FSA.  ECF No. 7-5 at 3 – 4.  Accordingly, to the extent that the petitioner is seeking time credits for any programs he completed prior to the effective date of the FSA, the claim is without merit.

### B.   Failure to Exhaust Administrative Remedies

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies.  42 U.S.C. § 1997e(a).  "Federal prisoners must exhaust their administrative remedies prior to filing § 2241 petitions.  Failure to exhaust may only be excused upon a showing of cause and prejudice."  McClung v. Shearin, 90 F. App'x 444, 445 (4th Cir. 2004) (citing Carmona v. United States Bureau of Prisons, 243 F.3d 629, 634-35 (2d Cir.2001), Little v. Hopkins, 638 F.2d 953, 953-54 (6th Cir.1981)).  Exhaustion as provided in § 1997e(a) is mandatory, regardless of the relief offered through administrative procedures.  Booth v. Churner, 532 U.S. 731, 741 (2001).  Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court.  Porter v. Nussle, 534 U.S. 516, 524 (2002) (citing Booth, 532 U.S. at 741).  "Those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.'"  Porter, 534 U.S. at 524.

Pursuant to McClung, failure to exhaust may only be excused upon a showing of cause and prejudice.  Petitioner claims that his failure to exhaust is excusable because any attempt to do so would be futile, although he also acknowledges that the BOP has taken the position that it has until January 2022 to enact the FSA.  ECF No. 16 at 2.  As recognized in Carmona, supra, which was cited by the Fourth Circuit in its opinion in McClung:

> [T]he interests of judicial economy and accuracy are served by requiring that, absent a showing of cause and prejudice, appeals proceed in the first instance through the federal agency review process.  Following the administrative

>procedures could potentially obviate the need for judicial review, or at a minimum, develop the factual record at the agency level at a time when the disputed events are still relatively fresh in witnesses' minds. In this sense, it is the analogue of the exhaustion of state remedies requirement for a state prisoner seeking federal habeas review, and the results governing failure to take this path should be the same.
>
>Administrative autonomy is also served by requiring that a federal prisoner justify his failure to exhaust his intra-Bureau remedies. When, however, legitimate circumstances beyond the prisoner's control preclude him from fully pursuing his administrative remedies, the standard we adopt excuses this failure to exhaust.

Carmona, 243 F.3d at 634 (internal citations omitted).

The petition states that Petitioner did not exhaust available administrative remedies. ECF No. 1 at 7 – 8. Petitioner states that he filed an internal grievance at the prison and a claim with the Bureau of Prisons, but that he did not receive a response from either the institution or the BOP. Id. Respondent concedes those administrative remedies were filed but argues that they are not relevant to the present matter, because they are requests for home confinement based on the CARES Act. ECF Nos. 11-1 at 9, 11-2 at 3, 11-4 at 2. Respondent further argues that Petitioner failed to file any administrative remedies which appealed to the warden or BOP regarding any Good Time Credits earned under the First Step Act. ECF No. 11-1 at 9. However, Respondent provided an "inmate request to staff" form wherein Petitioner requested that his "Earned Good Time Credits under the First Step Act be calculated, [his] awards be applied to supervised release and that [his] home confinement and sentence computation be adjusted accordingly." ECF No. 7-7 at 3. Handwritten on the form is a notation "no response from warden". Id. Neither Petitioner nor Respondent provided the Court with any documents to demonstrate that Petitioner further appealed that denial in order to

13

exhaust his claim under the FSA.

It appears that Petitioner has failed to exhaust all administrative remedies available to his claim that he is entitled to Good Time Credit which he alleges would make him immediately eligible for release. Accordingly, Petitioner's claim may not be considered under § 2241, and this Court is without jurisdiction to consider his petition. When subject-matter jurisdiction does not exist, "the only function remaining to the court is that of announcing the fact and dismissing the cause." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 118 S.Ct. 1003, 1012–16 (1998); Reinbold v. Evers, 187 F.3d 348, 359 n.10 (4th Cir. 1999).

## V. RECOMMENDATION

For the foregoing reasons, I **RECOMMEND** that the Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 [ECF Nos. 1, 7] be **DENIED** and that the § 2241 proceeding be **DISMISSED WITHOUT PREJUDICE**.

It is further **RECOMMENDED** that the Respondent's motion to dismiss [ECF No. 11] be **GRANTED**.

**Within fourteen (14) days** after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the Honorable Gina M. Groh, Chief United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.**  Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

The Clerk is directed to provide a copy of this Report and Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet, and to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED:	May 19, 2021

/s/ *Robert W. Trumble*
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE